**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| IN RE DIET DRUGS (PHENTERMINE/ FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | MDL No. 1203 |

**This document relates to:**

---

| | |
|---|---|
| RAY BAKER, et al v. WYETH, et al | CIV. ACTION NO. 04-22884 |
| LILLIAN BARHAM v. WYETH, et al | CIV. ACTION NO. 04-28319 |
| LINDA BROWN, et al v. WYETH, et al | CIV. ACTION NO. 04-22954 |
| MICHAEL MCKINNIE, et al v. WYETH, et al | CIV. ACTION NO.  04-22888 |
| DIANE MOODY, et al v. WYETH, et al | CIV. ACTION NO. 04-26889 |
| BONNIE D. OLIVER v. WYETH, et al | CIV. ACTION NO. 04-28318 |
| LARRY J. PRIVETT, et al v. WYETH, et al | CIV. ACTION NO. 04-22894 |
| LAURA SNIPES v. WYETH, et al | CIV ACTION NO. 04-26778 |
| LINDA WAGES, et al v. WYETH, et al | CIV ACTION NO. 04-22883 |
| THELMA WILLIAMS, et al v. WYETH, et al | CIV. ACTION NO. 04-26781 |

**PLAINTIFFS' RESPONSE TO WYETH'S NOTICE OF PENDING**
**MOTIONS TO REMAND**

Plaintiffs file this consolidated Response to Wyeth's consolidated Notice of Pending

Motions to Remand and Supplemental Memorandum in Opposition to Plaintiffs' Motions

to Remand. Prior to its transfer to the United States District Court for the Eastern District

of Pennsylvania, Plaintiffs had moved the transferor court to remand this action to its

original state court.  The matter was fully briefed before the transferor court. *See* Exhibits

A, B, and C to Wyeth's Notice. Plaintiff hereby adopts by reference and fully incorporates the arguments and attachments to their remand briefing. *See* Exhibit B to Wyeth's Notice of Pending Remand.

Plaintiffs will not repeat the arguments contained in the previously submitted briefing, but will address the new issues raised in Wyeth's notice and supplemental memorandum filed with this Court on December 7, 2004.  Plaintiffs will address the inaccurate and misleading arguments regarding the sales activities of Defendant sales representative Mark Markee.   Plaintiffs will also address Wyeth's even more misleading and erroneous arguments regarding the application of the Tennessee Products Liability Act of 1978, Tenn. Code Ann. § 29-28-101 et seq. ("TPLA") and the case of *Memphis Bank & Trust Co. v. Water Services, Inc.*, 758 S.W.2d 525, 526 (Tenn. 1988) to Plaintiffs' claims of fraud, negligence and misrepresentation against Defendant sales representative Mark Markee since Plaintiffs have stated valid claims under Tennessee law against Mr. Markee,  a nondiverse sales representative, these cases must be remanded to the state court in Shelby County, Tennessee.

## I. STANDARDS FOR DETERMINING FRAUDULENT JOINDER

This Court was correct when it stated that "[a]s an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard." PTO 3281 at 4.  In *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3d Cir. 1990), the Third Circuit provided a detailed framework in which to evaluate a claim of fraudulent joinder. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* at 111. "**A district court must resolve all**

**contested issues of substantive fact in favor of the Plaintiff . . . .”** *Boyer*, 913 F.2d at 111. Wyeth encourages this Court, as it has done so many times in the past, to do the opposite.

A claim of fraudulent joinder that is based upon the application of state law to the specific facts of a particular case requires the Court to make a fact intensive inquiry that is rarely amenable to resolution with “complete certainty.” *See Smoot v. Chicago, Rock Island and Pac. Railroad Co.*, 378 F.2d 879 at 882 (10th Cir. 1967) (where court pierces the pleading, “the issue must be capable of summary determination and must be proven with complete certainty”). For that reason, “[i]t is unclear whether, under the law of the Third Circuit, a federal court, when considering a motion to remand, should allow an affirmative defense like the statute of limitations to prove that no colorable basis exists for plaintiff’s claim.” *Gaul v. Neurocare Diagnostic, Inc.*, 2003 WL 230800 at *3 (E.D. Pa. Jan. 1, 2003). *See e.g., Walsh v. Tabby*, 2003 WL 1888856 at *3 (E.D. Pa. April 17, 2003) (“An inquiry into whether or not the discovery rule should apply to this matter would require a decision on the merits of Walsh’s claim against Dr. Tabby. Such an inquiry is impermissible in a motion to remand.”) (*citing Boyer*, 913 F.2d at 108); *Gaul*, 2003 WL 230800 at *4 (because discovery rule could apply to plaintiff’s claim against doctor, remand must be granted). In this case, genuine and disputed issues of material fact exist over whether the defendant sales representatives, including Mark Markee, committed the tortious acts enumerated in the Plaintiffs’ complaints.

There is disagreement between the parties over the merits of the Plaintiff’s claims, as is the situation in every case. Because Wyeth is asking this Court to make a determination on those disputed facts and, therefore, the merits of Plaintiffs’ claims,

3

remand must be granted.  Significantly, post-*Boyer* Third Circuit cases have interpreted the joinder standard to mean that "to avoid remand, the defendant [is] required to demonstrate that there [is] *no possibility* that a state court would find that the plaintiff pleaded a valid cause of action against a defendant who was not diverse." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) (interpreting *Boyer*) (emphasis added). Other judicial circuits have similarly interpreted *Boyer* to require that there be no possibility of recovery in state court. *See, e.g., Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 fn.3 (2d Cir. 1998).  As this Court itself has stated: "As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard." *Bankston v. Wyeth*, 2004 WL 1824357, at *2 (E.D.Pa. Aug. 12, 2004). Accordingly, contrary to Wyeth's assertions, this Court is bound to follow the *Angus* premise that unless the defendant can establish that there is *no possibility* of recovery in state court, remand is required.

### A. The Court cannot apply a summary judgment standard in considering the sales representatives' affidavits

In evaluating plaintiffs' causes of action, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint." *Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 851-52 (3rd Cir. 1992) (internal quotation omitted).  In these cases Wyeth asks this Court to look beyond the Plaintiffs' complaint, consider evidence (affidavits) outside the Complaint and deny remand. In doing so, Wyeth cites *Bankston*, where this Court relied upon Supreme Court authority for the point that it need not "blindly accept" whatever Plaintiffs may assert in their complaint. *Bankston v. Wyeth, et al*., 2004 WL 1824357 (E.D.Pa., Aug. 12, 2004). Wyeth asserts that, because the Plaintiffs have

4

failed to rebut the sales representatives' sworn statements that they did not detail Pondimin or Redux or did not know about the risk of valvular heart disease, the sales representatives have been fraudulently joined.

Even assuming, *arguendo*, that this Court is permitted to step outside the pleadings to determine whether a sham removal exists, it may not consider extraneous evidence that goes to the merits of a cause of action. Any such inquiry in limited to a showing that Plaintiff's joinder of non-diverse defendants was "without right and made in bad faith." *Chesapeake & Oh. Ry. Co. v. Cockrell,* 232 U.S. 146, 152 (1914). Thus, Wyeth's reliance on *Bankston* for the proposition that this Court may consider the merits of the evidence presented with respect to determining fraudulent joinder is inappropriate because it is contrary to Third Circuit law governing remand. An inquiry into a claim of fraudulent joinder is less searching than an inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6). *Batoff*, 977 F.2d at 852. In other words, district courts within the Third Circuit do not employ a full-blown summary judgment-type analysis, requiring plaintiffs to respond to affidavits with counter affidavits or depositions.

Assuming a limited use of affidavits and other evidence is permissible, such evidence may not be used to "pre-try" the case. *Peters v. AMR Corp.*, 1995 WL 358843, at *3 (N.D.Ill.) (citing *Boyer*, 913 F.2d at 111)). In the present case, Wyeth is asking this Court to do just that—to make a summary judgment-type determination based solely on the sales representatives' pre-discovery affidavits.  Wyeth misses the distinction between *considering* summary judgment-type evidence (which the court can do) and making a summary judgment-type *determination* (which it cannot do). *Peters*, *supra*, at *4. The essence of the sales representatives' affidavits factual showing is that they did not do what

5

the Plaintiffs have alleged they did—promote Redux or Pondimin, or make misrepresentations regarding the diet drugs' safety. As such, the Court has been presented with allegations and denials of those allegations. If the Court considers the denials made by the individual sales representatives in their affidavits, it must make a credibility determination and make findings on the ultimate issues of fact.  Wyeth's  arguments are basic fact issues that must be determined by the state court on remand, since they are aimed at the merits of the claim—not the propriety of suing the sales representatives. Stated differently, Wyeth has submitted affidavits that raise substantive factual issues—not jurisdictional facts. Since this Court is not concerned with the merits of the case at this juncture, Plaintiffs need not submit any counter-affidavits. Rather, Plaintiffs may rely solely on their complaints and supporting evidence as presented in their motion for remand. To hold otherwise would improperly permit Wyeth to "bait" the Plaintiffs into a full-blown summary judgment-type determination when it is not even clear that this Court has jurisdiction. *Id*. As *Boyer* made clear, a district court may not, under "the guise of deciding whether the joinder was fraudulent, step, from the threshold jurisdictional issue into a decision on the merits" *Boyer*, 913 F.2d at 112 (citing *Chesapeake & Ohio Ry. V. Cockrell*, 232 U.S. 146 (1914)).

Even if this Court looks beyond Plaintiffs' complaints and inquires into the evidence presented—as it did in *Bankston*—to determine whether a sham removal exists, remand is still required because the case *Bankston* relied upon to pierce the pleadings— *Wilson v. Republic Iron & Steele Co.*, 257 U.S. 92 (1921)—strongly supports remand in the instant cases.  In *Steel Co*., the Plaintiff filed a negligence action in state court against his employer and a co-employee. *Id*. at 93. The Defendants argued that the co-employee had

been fraudulently joined to defeat diversity jurisdiction and thereby preclude removal. *Id*. at 94. The Plaintiff did not respond to this argument, or, as the court put it, did not "take issue with any of the allegations of the petition for removal." *Id*. The Court interpreted the plaintiff's silence as assenting to the truth of the defendants' fraudulent joinder petition. *Id*. at 97-98. The Court therefore concluded that the uncontested facts contained in the removal petition established that the plaintiff had fraudulently joined the co-employee without good faith and for the sole purpose of defeating the employer's ability to remove the case. *Id*. Unlike the plaintiff in *Wilson,* however, the Plaintiffs in these cases do "take issue" with the factual allegations in the petition for removal, as evidenced by their motions to remand, complete with dozens of legal citations. *See Sprowls v. Oakwood Mobile Homes, Inc.,* 119 F. Supp.2d 694, 696 (W.D.Ky. 2000) (equating "responding to Defendants' motion for judgment on the pleadings" with "undoubtedly tak[ing] issue with the factual allegations in the petition for removal [under the *Wilson* standard] . . ."). Given that the Plaintiffs have taken issue with the petition for removal, this Court may not now "go behind" the parties' pleadings to address the merits of those pleadings. The Supreme Court clarified this position in *Mecom v. Fitzsimmons Drilling Co., Inc., et al*., 294 U.S. 183 (1931), when it said: "To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before the court . . . ." *Id*. at 189. *Mecom* is significant, not only because it specifically distinguished the *Wilson* case, but also because it specifically limited a district court's ability to probe into the facts of the evidence beyond that required for a finding of "actual fraud." *Id*. "It has been uniformly held that, where there is a prima facie joint liability, averment and proof that resident and nonresident tortfeasors are

7

jointly sued for the purpose of preventing removal does not amount to an allegation that the joinder was fraudulent, and will not justify removal from the state court." *Id*.

As applied to the facts of this case, Wyeth's "averments and proof" in the form of the sales representatives' affidavits—do not amount to proof of fraudulent joinder; rather, they simply create a factual dispute when compared to Plaintiff's complaint and supporting evidence. Accordingly, the district court's role is limited to determining whether there is a good faith cause of action against the sales representative defendants, which does not include determining a winner at this jurisdictional stage of inquiry. The state court must make those decisions following remand.

## B. Plaintiff's claims constitute a good faith cause of action against the sales representative defendants

Wyeth's further contention that the Plaintiffs have no good faith basis to proceed against the sales representative defendants in this case is both factually and legally absurd. "[I]n a removal proceeding the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined." *Mecom,* 284 U.S. at 189; *see also Abels v. State Farm Fire & Cas. Co*., 770 F.2d 26, 32 (3d Cir. 1985). In determining whether a plaintiff actually intends to proceed against named defendants, the Third Circuit has relied upon a subjective and objective test. *See Abels*, 770 F.2d at 32.

Subjectively, Plaintiffs' complaints contain numerous allegations of "positive tortious acts" by the Defendant sales representatives. *See* Complaints. Alleged sales representatives acts include, but are not limited to: concealing or downplaying risks they knew or should have known were associated with the diet drugs, overstating the weight-loss and health benefits associated with the use of the diet drugs and encouraging an

impermissible, off label use of the diet drugs.  *See* Complaints. **Plaintiffs are currently pursuing discovery regarding their claims against Wyeth's sales representatives in these cases.  Notices have been served in each case.  In addition request has been made for the deposition of Julia Cumberbatch, Wyeth's Vice President of Information Services.  *See Exhibit 1.* Under Third Circuit law, Plaintiffs' conduct in this respect clearly evidences an intention to actually proceed against the sales representative defendants.** *See Abels*, 770 F.2d at 32.

Objectively speaking, there must be no possibility that a state court would find that the Plaintiff pleaded a valid state court cause of action against the resident defendant. *Angus*, 989 F.2d at 146. It is indisputable that Tennessee law recognizes a cause of action against sales representative defendants for independent wrongful conduct arising out of their promotion of diet drugs. As discussed in detail in their motions to remand, Plaintiffs' complaints allege fraudulent conduct on the part of the sales representative defendants arising out of their promotion of Pondimin and Redux. This fact by itself is sufficient to support remand based on applicable Tennessee law. To the extent Wyeth believes that Tennessee law on this point is distinguishable is irrelevant because all doubts must be resolved in favor of remand. *Abels*, 770 F.2d at 29, 32 (fact that "substantial question" existed regarding Plaintiff's state law claim insufficient to deny remand). Third Circuit law mandates if there is any "authority supporting [that] such a cause of action exists[,]" then this objective standard has been met and the case must be remanded. *Id*. at 32. Since there is clear authority supporting the Plaintiffs' claims in Tennessee, Plaintiff has likewise met the objective part of the analysis and remand is required. *See id*. As the Third Circuit has made clear, "[t]o inquire any further into the legal merits would be inappropriate in this

9

preliminary jurisdictional determination." *Id*. at 32-33.

<div align="center">Plaintiffs' Claims</div>

The Plaintiffs have asserted in their Complaint multiple claims for negligence and misrepresentation against the non-diverse defendant sales representative **Mark Markee**. Wyeth mistakenly argues that these claims against the sales representative are somehow not viable under the TPLA. Wyeth misses the point. The claims against the sales representative defendants are for their own independent tortious conduct, unrelated to the products liability related claims, specifically the independent acts of negligence and misrepresentation by the sales representatives in their discussion with physicians, including Plaintiffs' physicians.

## A. The TPLA Does Not Apply to Plaintiffs' Claims Against Sales Representatives

Wyeth relies solely on the 1998 Tennessee Supreme Court case of *Memphis Bank & Trust Co. v. Water Services, Inc.* which only involved the determination of the applicability of the TPLA to strict liability claims against the sales representative and not other claims for the independent tortious acts, such as negligence, fraud or misrepresentation. *See Memphis Bank*, 758 S.W.2d at 526 (only determining that the TPLA would apply to the strict products liability claims against the sales representative and not addressing other claims such as the claims for negligence stating "[t]he case is controlled by the provisions of that statute insofar as the claim of strict liability is concerned" but with respect to other claims stating "no issue with respect to those claims has been made in the appeal to this Court.") It is clear that the Plaintiffs' claims against the sales representative defendants for negligent misrepresentation and intentional misrepresentation are not covered by the TPLA, and the

<div align="center">10</div>

*Memphis Bank* decision is inapplicable.  See *First National Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 931 (Tenn. 1991) (holding that Tennessee's Products Liability Act, despite its name, is not a comprehensive enactment of products liability law in Tennessee); *Owens v. Truckstops of America*, 915 S.W.2d 420, 432 (Tenn. 1996) (strict products liability claim cannot be brought against seller unless requirements of Tenn. Code Ann. § 29-28-106(b) (Supp.1994) are satisfied, but recognizing that comparative fault principles would still apply to the claims based upon the negligence of the tortfeasors). In *Owens,* the Tennessee Supreme Court specifically recognized that a Plaintiff may bring a strict products liability claim against a manufacturer and seller (if qualifying under TPLA), and may also bring claims for negligence against those same tortfeasors. *Id.*

> If those defendants who can be held jointly and severally liable on a claim of strict liability are also charged with negligence, as in this case, their liability on the negligence charge will be as separate, independent tortfeasors, and their liability on the negligence charge will be several only. The result of applying these principles to this case is that on the charge of strict liability in tort, the liability of Vitro and Michael to Truckstops is joint and several, but only to that portion of the total liability that is attributable to them as a single unit or share, under comparative fault principles. On the charge of negligence, the liability of each is several and in proportion to the damage attributable to its negligence.

*Owens*, 915 S.W.2d at 432-33.

The claims brought by Plaintiffs against the defendant sales representatives are not based upon the "manufacture, construction, design, warning instruction, marketing, packaging, or labeling" of the diet drugs. Instead those claims are related to the independent and often illegal acts of the sales representatives during their meetings with the Plaintiffs' prescribing physicians, including but not limited to encouraging the off label combination use of the diet drugs Pondimin and Redux with Phentermine. It is clear that

Wyeth will likely deny encouraging this fraudulent and illegal activity by their sales representatives. If they do, and the jury believes Wyeth, then Plaintiffs must have the opportunity to bring those claims against the sales representative defendants because Wyeth will likely seek to have their negligence added to the verdict form. *See id. (*holding that Defendant restaurant could put manufacturer and seller on verdict form jointly and severally for strict products liability under the TPLA, and severally for their negligence, even where Plaintiffs claims against manufacturer and seller were time barred).

In summary, the Plaintiffs have pled a cause of action under Tennessee law against the non- diverse sales representatives sufficient to withstand a Rule 12 (b)(6) motion to dismiss or a motion for summary judgment pursuant to T.R.C.P. 56.01 et seq. which is all that is required to sustain this Court's remand of this action to state court and to assess reasonable costs, including attorney fees, for the improper removal.

## B. Defendant  Did Promote Redux and Pondimin

Wyeth claims that the non-diverse sales representative **Mark Markee** did not promote Pondimin or Redux to Plaintiffs prescribing physicians. Wyeth relies upon the self-serving declaration of **Mark Markee, who** denies promoting either product to Plaintiffs' physicians.   Markee's declaration is contrary to evidence that appears in CRS data obtained from the defendant Wyeth through discovery. See Exhibit 2  It appears that Defendant Wyeth wants to avoid submitting Markee for deposition over her call reports and whether they in fact involved Pondimin and Redux. American jurisprudence does not allow Defendant get off the liability hook by simply saying "I didn't do it," especially when such statements are contrary to the allegations of the complaint, contrary the evidence then available, and are made prior to any discovery occurring in the case.  See Federal Rules

12

Civil Procedure Rule 56 (f) allowing discovery "before" dispositive motion ruling.

WHEREFORE, Plaintiffs request that these cases be immediately remanded to the state court in Shelby County, Tennessee.

Respectfully submitted this ___ day of December 2004.

<div style="margin-left:50%">

_____

T. Robert Hill
HILL-BOREN P.C.
1269 North Highland Avenue
P. O. Box 3539
Jackson, TN  38301
(731)423-3300

Robert M. Cearley, Jr.
Ark. Bar No. 69008
CEARLEY LAW FIRM, P.A.
212 Center Street, Suite 200
Little Rock, AR 72201
(501)372-5600

Bryan F. Aylstock, Esq.
Neil D. Overholtz, Esq.
Aylstock, Witkin & Sasser,
55 Baybridge Drive
Gulf Breeze, FL 32561
(850) 916-7450

</div>

13

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of December 2004, a true and correct copy of the above was filed with the Court and a copy of the same was forwarded to all counsel of record listed below and those required to receive service by Pre-Trial Order No. 19, the names of whom appear on the attached service list.

Darren P. Nicholson, Esq.
*Arnold & Porter, LLP*
555 12 Street, N.W.
Washington, DC 20004
(202) 942-5000

_____
T. Robert Hill

14